# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

May 3, 2021

Lyle W. Cayce
Clerk

No. 19-51074

DANA WHITE, *individually and on behalf of all others similarly situated*,

*Plaintiff—Appellant*,

*versus*

U.S. CORRECTIONS, L.L.C.; US CORRECTIONS, L.L.C.; SOUTH EAST EMPLOYEE LEASING, INCORPORATED,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-390

Before ELROD, DUNCAN, and WILSON, *Circuit Judges*.

CORY T. WILSON, *Circuit Judge*:

Dana White filed suit on behalf of herself and other employees against her former employer, US Corrections, L.L.C. (USC), and two other entities, alleging an overtime-pay claim and a recordkeeping claim under the Fair Labor Standards Act (FLSA). The district court dismissed both claims under Rule 12(b)(6) and entered judgment in favor of USC and the company's

No. 19-51074

payroll administrator, South East Personnel Leasing, Inc. (South East).[1]

On appeal, White challenges the dismissal of her overtime-pay claim and, relatedly, the district court's denial of her motion for partial summary judgment.[2]  Both rulings were grounded on the applicability of the Motor Carrier Act (MCA) exemption to White's overtime-pay claim.  29 U.S.C. §§ 207(a)(1), 213(b)(1).  The district court concluded that the MCA exemption defeated White's claim.  White contends that the Interstate Transportation of Dangerous Criminals Act of 2000 ("Jeanna's Act"), 34 U.S.C. §§ 60101–60104, precludes the applicability of the MCA exemption to her and others involved in transporting prisoners, such that they are not exempted from the FLSA's overtime-pay requirements.

We agree with the district court that the MCA exemption governs White's job with USC.  But we nonetheless conclude that the district court erred when it dismissed White's overtime-pay claim at the pleading stage.  We therefore reverse and remand for further proceedings.

## I.

USC employed White as an extradition officer from June 2018 to January 2019.  In that role, White transported prisoners between prisons and other facilities in passenger vans.  White alleges she and other similarly-situated extradition officers often worked more than forty hours per week

---

[1] South East Personnel Leasing, Inc. asserts that it was erroneously designated in White's complaint as "South East Employee Leasing, Inc."  For the sake of simplicity, we refer to the defendant-appellee as "South East."

[2] White does not challenge the district court's dismissal of her recordkeeping claim.  While we lack jurisdiction to address the district court's interlocutory order denying White's motion for partial summary judgment, as we will explain, the same legal issue undergirds both of the court's rulings.

while employed at USC.  She also alleges that she and others were not paid overtime for hours worked in excess of forty hours per week.

White filed the instant action against USC, South East, and U.S. Corrections, L.L.C.[3] on April 5, 2019.  In her complaint, White alleged the defendants failed to pay overtime compensation in violation of the FLSA, 29 U.S.C. § 207(a)(1), and likewise failed to maintain accurate time and pay records, *id.* § 211(c).  South East filed an answer to White's complaint.  USC filed a motion to dismiss White's claims under Federal Rule of Civil Procedure 12(b)(6) and attached two exhibits: (1) a Federal Register publication (USC's Notice of Approval from the Surface Transportation Board) and (2) information from the Federal Motor Carrier Safety Administration (FMCSA) Safety and Fitness and Electronic Records (SAFER) System.

USC asserted that White and other putative class members were excluded from the FLSA's overtime-pay requirements because their jobs fell within the MCA exemption, which excepts certain employees whose job duties affect the safety and operation of vehicles in transportation from earning overtime pay.  29 U.S.C. § 213(b)(1); *see Levinson v. Spector Motor Serv.*, 330 U.S. 649, 685 (1947).  To support this assertion, USC relied on facts purportedly substantiated by the exhibits attached to its dispositive motion.  USC also contended that it was subject to the Department of Transportation's regulatory purview—a requirement for the MCA exemption to apply—under Jeanna's Act, which governs private prisoner transportation entities.  34 U.S.C. § 60103.  As for White's recordkeeping

---

[3] It is unclear from the record whether U.S. Corrections, L.L.C. is an actual company or merely a misnomer for USC.  Regardless, the district court clerk ordered an entry of default against U.S. Corrections, L.L.C. on July 8, 2019, and the entity is not a party to this appeal.

claim, USC argued that no private cause of action existed for the alleged violation.

White opposed USC's motion, asserting that at the Rule 12(b)(6) stage, it was improper for the district court to consider matters outside of her complaint (i.e., USC's proffered exhibits and the factual statements predicated on them) to conclude that she was an exempt employee under the MCA exemption.[4]  She alternatively requested the district court either to "postpone disposition" until trial, allow the parties to conduct discovery, or grant her leave to file an amended complaint.  South East filed an amended answer in lieu of its own dispositive motion, adopting USC's arguments and interposing the MCA exemption as an affirmative defense.

While USC's motion to dismiss was pending, White filed a separate motion for partial summary judgment.  In her motion, White in essence argued the converse of USC's motion, namely that Jeanna's Act *precluded* the Department of Transportation's regulatory authority over private prisoner transportation companies, so that the MCA exemption could not apply to employees of private prisoner transportation companies.  As a result, USC owed White and similarly-situated employees overtime pay for hours worked in excess of forty hours per week.  USC opposed White's motion and attached a series of exhibits to its response.[5]  The district court referred both

---

[4] White also argued that USC improperly raised the MCA exemption as an affirmative defense by failing to plead the defense in its answer.  She reiterates this argument on appeal.  Federal Rule of Civil Procedure 8(c) requires defendants to plead affirmative defenses in their responsive pleading. FED. R. CIV. PROC. 8(c)(1); *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 577 (5th Cir. 2009).  But USC preserved its affirmative defense by raising it in its initial response to the complaint, i.e., its Rule 12(b)(6) motion.  White's argument is therefore without merit.

[5] USC reattached the exhibits included its Rule 12(b)(6) motion to dismiss and attached the following additional exhibits: (1) Driver Logs; (2) USC's Department of Transportation permit; (3) FMCSA Safety Measurement System (SMS) information; (4)

USC's motion to dismiss and White's motion for partial summary judgment to a magistrate judge for recommendation.

The magistrate's recommendations to the district court were a bit muddled. The magistrate recommended that USC's motion to dismiss be denied as to White's overtime-pay claim because White "alleged a plausible claim for relief under § 207(a)(1)." But somewhat inconsistently, the magistrate also concluded that "the MCA applies . . . and [White's] overtime compensation claim under § 207(a)(1) fails as a matter of law and must be dismissed." As to White's recordkeeping claim under 29 U.S.C. § 211(c), the magistrate recommended that USC's motion to dismiss be granted. Finally, the magistrate recommended denying White's motion for partial summary judgment.

On November 18, 2019, the district court, without addressing the inconsistency in the magistrate judge's recommendations, accepted and adopted them.[6] The district court entered an order that denied White's motion for partial summary judgment and granted USC's Rule 12(b)(6) motion to dismiss, concluding that Jeanna's Act did not preclude the application of the MCA exemption to employees of private prisoner transportation companies, the MCA exemption applied to White, and no private cause of action existed for White's recordkeeping claim. The district court then dismissed all of White's claims against all three defendants with prejudice. This appeal followed.

---

an SMS inspection report; and (5) a Federal Register publication (Attorney General Rule and Regulation).

[6] Perhaps a result of this lack of clarity, the parties dispute whether the district court dismissed White's claims under Rule 12(b)(6) or Rule 56(f). Though the record is admittedly confusing, we construe the district court's dismissal of White's claims to have occurred pursuant to Rule 12(b)(6).

No. 19-51074

## II.

A district court's grant of a Rule 12(b)(6) motion to dismiss is reviewed de novo. *Vizaline, L.L.C. v. Tracy*, 949 F.3d 927, 931 (5th Cir. 2020). We accept all well-pled facts as true, construing all reasonable inferences in the complaint in the light most favorable to the plaintiff. *Heinze v. Tesco Corp.*, 971 F.3d 475, 479 (5th Cir. 2020). "But we do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Id.* (internal quotation marks and citations omitted). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must prove the plaintiff's grounds for entitlement to relief—including factual allegations in a complaint that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

## III.

We first address White's argument that Jeanna's Act precludes application of the MCA exemption to private prisoner transportation companies and their employees.[7] Then, with the controlling legal issue clarified, we discuss whether dismissal of White's overtime-pay claim was proper at the pleading stage.

---

[7] We reject USC's assertion that White "abandon[ed]" her statutory-construction argument on appeal. As South East noted in its principal brief, both USC's motion to dismiss and White's motion for partial summary judgment centered around whether the MCA exemption applied to White and others similarly situated, whether by operation of Jeanna's Act or otherwise. And, as noted above, the parties' arguments regarding the MCA exemption are essentially two sides of the same coin. Further, the district court considered White's argument—whether Jeanna's Act precludes the applicability of the MCA exemption to employees of private prisoner transportation companies—before dismissing her claims under Rule 12(b)(6).

## A.

The first issue—whether Jeanna's Act renders the MCA exemption inapplicable to private prisoner transportation companies and their employees, such that they are not exempt from the FLSA's overtime-pay requirements—appears to be a question of first impression for this court. The district court found that the MCA exemption applied to White and employees like her, and we agree that the MCA exemption governs White's job with USC.

The FLSA ordinarily requires employers to pay overtime to employees who work in excess of forty hours per week. 29 U.S.C. § 207(a)(1). If an employer violates this rule, it is "liable to the employee or employees affected in the amount of their . . . unpaid overtime compensation . . . and in an additional equal amount as liquidated damages." *Parrish v. Premier Directional Drilling, L.P.*, 917 F.3d 369, 379 (5th Cir. 2019) (quoting 29 U.S.C. § 216(b)). The overtime-pay rule is subject to several enumerated exemptions, however. *See* 29 U.S.C. § 213. "[T]he employer bears the burden to establish a claimed exemption" applies to the claimant. *Olibas v. Barclay*, 838 F.3d 442, 448 (5th Cir. 2016) (quoting *Allen v. Coil Tubing Servs., L.L.C.*, 755 F.3d 279, 283 (5th Cir. 2014)).

Relevant here, the MCA exemption, 29 U.S.C. § 213(b)(1), provides that an employee is exempt from the FLSA's overtime pay requirement if "the Secretary of Transportation has power to establish qualifications and maximum hours of service pursuant to the provisions of section 31502 of Title 49." Section 31502, in turn, delineates "motor carrier[s]" and "motor private carrier[s]" as two types of employers entitled to the MCA exemption. 49 U.S.C. § 31502(b)(1), (b)(2). The Secretary of Transportation "need only possess the power to regulate the employees at issue; it need not actually exercise that power for the [MCA] exemption to apply." *Songer v. Dillon*

*Res., Inc.*, 618 F.3d 467, 472 (5th Cir. 2010) (alteration in original) (citation omitted).

The Department of Transportation has promulgated regulations that interpret the statutory requirements of the MCA exemption. *See* 29 C.F.R. §§ 782.0–782.8. Here, the pertinent regulation is 29 C.F.R. § 782.2(a), which states that the applicability of the MCA exemption to a particular employee "depends both on the class to which his employer belongs and on the class of work involved in the employee's job." The rule further explains that the Secretary of Transportation may establish the qualifications and maximum hours or service for employees of "motor carrier[s]" and "motor private carrier[s]" who

> (1) [a]re employed by carriers whose transportation of passengers or property by motor vehicle is subject to [the Secretary of Transportation's] jurisdiction under section 204 of the Motor Carrier Act, [and]

> (2) engage in activities of a character directly affecting the safety and operation of motor vehicles in the transportation on the public highways of passengers or property in interstate or foreign commerce within the meaning of the Motor Carrier Act.

29 C.F.R. § 782.2(a); *see Allen*, 755 F.3d at 283 (noting that for the MCA exemption to apply, an employee must "meet both of these requirements").

Against this backdrop, we turn to White's argument. As she did in the district court, White focuses her argument on appeal only on the first requirement of 29 C.F.R. § 782.2(a)—whether she is subject to the Secretary of Transportation's jurisdiction. Specifically, she contends that under Jeanna's Act, the Attorney General (as opposed to the Secretary of Transportation) is exclusively empowered to establish the qualifications and maximum hours of service for employees who work for private prisoner

transportation companies. Put simply, White asserts that because Jeanna's Act explicitly authorizes the Attorney General to regulate employees of private prisoner transportation companies, the Department of Transportation does not have such authority, and the MCA exemption thus cannot exempt her and others from overtime pay. In support of this contention, White primarily relies upon 34 U.S.C. § 60103(a) of Jeanna's Act, which states that "the Attorney General, in consultation with the American Correctional Association and the private prisoner transport industry, shall promulgate regulations relating to the transportation of violent prisoners in or affecting interstate commerce."

White thus posits an "either/or" proposition. But we conclude that the interplay between the MCA exemption and Jeanna's Act is correctly construed to be "both/and" regarding employers like USC (and employees like White). In other words, the Attorney General's authority to regulate the transportation of violent prisoners in interstate commerce does not obviate the Secretary of Transportation's authority to regulate employees of "motor carrier[s]" and "motor private carrier[s]" as contemplated by the MCA exemption. The MCA exemption and Jeanna's Act are not mutually exclusive, and White's job with USC falls under the purview of both.

The regulations promulgated by the Attorney General under Jeanna's Act bear out this conclusion. *See* 28 C.F.R. §§ 97.1–97.30. In 28 C.F.R. § 97.1, the Attorney General detailed the scope of Jeanna's Act, namely that the Act "provide[s] minimum security and safety standards for private companies that transport violent prisoners on behalf of State and local jurisdictions." In 28 C.F.R. § 97.13, which refers to the maximum driving time of employees of private prisoner transportation companies, the Attorney General explained:

> Companies covered under [Jeanna's Act] must adhere to the maximum driving time provisions applicable to commercial motor vehicle operators, as set forth in Department of Transportation regulations at 49 C.F.R. § 395.3 which will apply regardless of whether a private prisoner transport company is covered by Department of Transportation regulations.

And, in 28 C.F.R. § 97.22, the Attorney General clarified that the regulations implementing Jeanna's Act "do not pre-empt any applicable federal . . . law that may impose additional obligations on private prisoner transport companies or otherwise regulate the transportation of violent prisoners."

The text of these regulations does not support White's argument that Jeanna's Act removes her class of workers from the regulatory reach of the Department of Transportation (and in turn, from the reach of the MCA exemption). To the contrary, the regulations indicate that employees of private prisoner transportation companies are regulated by both the Department of Transportation and the Department of Justice. Jeanna's Act sets a baseline for private prisoner transportation companies. But by their terms, neither Jeanna's Act nor its implementing regulations supplant the Secretary of Transportation's authority to regulate employees of private prisoner transportation companies who happen *also* to fit within the definition of the MCA. We therefore agree with the district court that, Jeanna's Act notwithstanding, the MCA exemption of the FLSA governs private prisoner transportation companies and their employees like White.

## B.

Still, two questions remain. The first is whether White failed to state a claim upon which relief can be granted. The second, relatedly, is whether the MCA exemption forecloses White's claim based on the pleadings.

To state a prima facie overtime-pay claim under 29 U.S.C. § 207(a)(1), a plaintiff must plausibly allege: (1) that an employer-employee relationship existed during the time that she worked in excess of forty hours per week; (2) that she engaged in activities covered by the FLSA; (3) that the employer violated the FLSA's overtime-wage requirements; and (4) the amount of overtime-pay due. *E.g.*, *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014) (collecting cases).

White's complaint meets these requirements. First, White alleges that she worked for USC as an extradition officer from June 2018 to January 2019 and that during her employment, she "regularly" worked in excess of forty hours per week. Second, she alleges that she engaged in activities covered by the FLSA, specifically, that she "engaged in commerce" in her job with USC because she transported prisoners between prisons and other facilities "in passenger vans weighing less than 10,001 pounds." *See* 29 U.S.C. § 207(a)(1); *see also Carley v. Crest Pumping Techns., L.L.C.*, 890 F.3d 575, 579–82 (5th Cir. 2018) (clarifying that the MCA exemption does not apply to certain employees who operate motor vehicles weighing less than 10,001 pounds). Lastly, White alleges that she and other similarly-situated employees were paid on an hourly basis but that she was "paid for her overtime at a rate less than one and one-half times the regular rate at which she was [] employed in violation of the FLSA." Crediting her complaint's allegations most favorably to her, as we must in weighing a Rule 12(b)(6) motion, White thus plausibly pled a prima facie claim for relief under the FLSA.

Indeed, this conclusion is consistent with the recommendation of the magistrate judge, adopted by the district court, that USC's motion to dismiss should be denied. We diverge from the district court, however, on the question of whether the MCA exemption nonetheless forecloses White's claim at the pleading stage. Following the magistrate judge's

recommendation, the district court concluded that it did and dismissed White's claim with prejudice. But this ruling was premature in this case.

While USC adequately raised the MCA exemption as an affirmative defense to White's claim, "[i]f the employer claims 'that the suing employee is exempt from the overtime requirement,' then the employer 'has the burden of proving that the employee falls within the claimed exempted category.'" *Johnson*, 758 F.3d at 630 (quoting *Samson v. Apollo Res., Inc.*, 242 F.3d 629, 636 (5th Cir. 2001)). USC attempted to meet this burden by attaching several exhibits to its motion to dismiss (and to its response to White's motion for partial summary judgment). But the "determination as to whether an employee is exempt under the [FLSA] is primarily a question of fact" typically better suited for summary judgment. *Dalheim v. KDFW-TV*, 918 F.2d 1220, 1224 (5th Cir. 1990) (alteration in original) (quoting *Blackmon v. Brookshire Grocery Co.*, 835 F.2d 1135, 1137 (5th Cir. 1988)); *accord Aston v. Glob. Prisoner Servs., LLC*, No. 16-CV-420, 2016 WL 4079547, at *4 (W.D. Tex. July 29, 2016) (holding that applicability of the MCA exemption "is a fact-based assertion that goes to the merits of [p]laintiff's claims and requires factual determinations not appropriate on a motion to dismiss"). This is just such a typical case.

To sum it up: The district court correctly construed the law to determine that the MCA exemption governs the relationship between White and USC, irrespective of Jeanna's Act and its implementing regulations. But it was error to apply the MCA exemption to foreclose the otherwise plausible FLSA overtime-pay claim alleged by White in her complaint, at least at the pleading stage. Accordingly, the district court's dismissal of White's overtime-pay claim is

REVERSED and REMANDED.